United States District Court
Southern District of Texas

**ENTERED**
June 12, 2026
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIM. ACTION NO. 2:22-CR-00255 |
| | § | |
| LEONARDO BARROSO, | § | |
| Defendant. | § | |

### MEMORANDUM OPINON AND ORDER DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255, AMENDMENT 821, AND 18 U.S.C. § 3582(c)(1)(A)

Pending before the Court is Defendant Leonardo Barroso's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) and Amendment 821, (D.E. 50), to which the United States of America filed a memorandum in opposition, (D.E. 74), and Defendant filed a reply, (D.E. 75). For the reasons explained below, the Court **DENIES** Defendant's § 2255 motion, § 3582 motion, and motion for a sentence reduction under Amendment 821. (D.E. 50).

### I. Background[1]

#### A. Factual

Defendant participated in an illicit firearm export scheme. (D.E. 28, p. 4–6). In his role, Defendant purchased firearms in the United States for third party transfer to Mexico. *Id.* at 4. Using identification belonging to another person, Defendant purchased numerous firearms. *Id.* These firearms were subsequently exported to Mexico. *Id.* On at least one occasion, Defendant himself transported a firearm to Mexico. *Id.* at 7.

Through his participation in the scheme, Defendant would travel door-to-door, purportedly

---

[1] The Court relies on the facts contained in Defendant's amended factual stipulation, (D.E. 26), which he admitted at rearraignment, (D.E. 57, p. 17–18), and the unrebutted PSR, (D.E. 28), which the Court adopted at sentencing, (D.E. 64, p. 4).

selling energy plans. *Id.* at 5. Defendant recorded the personal information of those he "sold" plans to and utilized that information to purchase firearms. *Id.* at 5–6. In sum, Defendant purchased at least 36 firearms for export to Mexico—none using his own identity. *Id.* at 4–7.

**B. Procedural**

Defendant was charged with two counts of making a false statement while purchasing a firearm and one count of aggravated identity theft. (D.E. 12). On May 2, 2022, Defendant's counsel filed a memorandum of plea agreement, which reflected the Defendant pled guilty to one count of making a false statement while purchasing a firearm. (D.E. 15, p. 1). Defendant subsequently filed an entry of a plea of not guilty. (D.E. 17). At the final pretrial conference on June 2, 2022, Defendant's counsel notified the Court of Defendant's intent to plead guilty and the need to go over the plea agreement with Defendant. (D.E. 56, p. 3). Following this discussion, Defendant's counsel filed the updated plea agreement containing a material modification—Defendant was now pleading guilty to one count of making a false statement while purchasing a firearm and one count of aggravated identity theft. (D.E. 22-1, p. 1).

At his June 9, 2022 rearraignment hearing before Magistrate Judge Jason Libby, Defendant testified under oath that his counsel had read and explained the plea agreement to him. (D.E. 57, p. 12). Magistrate Judge Libby walked through the counts contained in the plea agreement. *Id.* at 14. Defendant testified he understood the basic terms of the plea agreement. *Id.* Magistrate Judge Libby confirmed Defendant understood the terms of the plea agreement. *Id.* at 15. Defendant testified he was pleading guilty voluntarily, no one had threatened or forced him to plead guilty, and that he understood and signed the Plea Agreement. *Id.* at 17.

Magistrate Judge Libby accepted Defendant's guilty plea after being satisfied that he was competent to enter a plea, there was a factual basis for the plea, he understood the consequences

of entering a plea, and that he was voluntarily and knowingly pleading guilty. *Id.* at 17–22. Magistrate Judge Libby filed Findings and Recommendations on Plea of Guilty. (D.E. 24). Defendant did not object to Magistrate Judge Hampton's findings, which were accepted by this Court. (D.E. 64, p. 1). Defendant's counsel filed the amended plea agreement, which reflected Defendant's intent to plead guilty to counts one and three. (D.E. 25, p. 1).

The Court sentenced Defendant on February 21, 2024. (D.E. 64); February 21, 2024 Minute Entry. Neither side objected to the PSR, which the Court adopted without change. (D.E. 64, p. 4). The Government recommended 120 months imprisonment—96 months for Count 1 and 24 months for Count 3 to run consecutively. *Id.* at 6. Defendant's counsel requested a downward variance for his time in custody and the assistance he provided to the Government. *Id.* at 7. The Court ultimately varied downward from the Government's recommendation and sentenced Defendant to 111 months imprisonment—87 months for Count 1 and 24 months for Count 3 to run consecutively. *Id.* at 9.

The Court entered judgment on February 22, 2024. (D.E. 46). Consistent with his appellate waiver, Defendant did not appeal. He filed the current motion under 28 U.S.C. § 2255 on November 26, 2024. (D.E. 50). It is timely. *See* 28 U.S.C. § 2255(f)(1).

### III. Law & Analysis

#### A. Defendant's § 2255 Motion

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that

3 / 14

could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Before deciding whether to plead guilty, a defendant is entitled to "the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364–65 (2010) (citations omitted). *Strickland's* two-part analysis applies to claims of ineffective assistance of counsel in this context. *E.g., Hill v. Lockhart*, 474 U.S. 52, 57 (1985). During this stage of a proceeding, the Supreme Court has reiterated that counsel has "the critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement.'" *Padilla*, 559 U.S. at 370 (citing *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)). "It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly," and the "lawyer must actually and substantially assist his client in deciding whether to plead guilty." *United States. v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008) (quoting and *citing Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974)). "It is his job to provide the accused an understanding of the law in relation to the facts." *Id.* "The advice he gives need not be perfect, but it must be reasonably competent." *Id.* In this context, the prejudice prong requires the prisoner to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (quoting *Hill*, 474 U.S. at 59). "The test is objective; it turns on what a reasonable person in the defendant's shoes would do." *Id.* at 209; *accord Padilla*, 559 U.S. at 372 ("[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

Defendant's § 2255 motion alleges six grounds for relief: (1) Defendant's plea is invalid; (2) Counsel failed to object to a material modification to the plea agreement; (3) Counsel failed to confer with Defendant regarding the material modification; (4) Counsel failed to object to the PSR; (5) Counsel exhibited a pattern of absence from hearings during Defendant's pretrial detention; and (6) Counsel failed to advocate for Defendant during his extended pretrial detention. (D.E. 50,

p. 2–3). The Court broadly construes these arguments into three categories: the voluntariness of Defendant's plea, counsel's failure to advocate pre-plea, and counsel's failure to object at sentencing. *See id.* The Court addresses these three grounds below.

### 1. Defendant's Plea

"A voluntary and unconditional guilty plea has the effect of waiving all nonjurisdictional defects in the prior proceedings." *United States v. Wise*, 179 F.3d 184, 186 (5th Cir. 1999) (citing McMann v. Richardson, 397 U.S. 759, 766 (1970); *Busby v. Holman*, 356 F.2d 75, 77 & n. 3 (5th Cir. 1966) (collecting cases)). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991) (citation omitted). "This includes all [ineffective assistance of counsel] claims 'except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary.'" *United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019) (quoting *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000)).

In determining the voluntariness of a plea, the Court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel. *United States v. Washington*, 480 F.3d 309, 315 (5th Cir. 2007). With respect to sentencing, a guilty plea is considered knowing and voluntary so long as a defendant knows "the maximum prison term and fine for the offense charged." *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (quoting *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)). As long as Defendant Barroso "'understood the length of time he might possibly receive, he was fully aware of his plea's consequences.'" *See*

*Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir. 1982) (quoting *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981)).

Defendant affirmed under oath at rearraignment that he had discussed his charges with counsel and understood the charges. (D.E. 57, p. 6–8). He stated that he understood his right to a trial and his rights at trial, and that he was waiving those rights. *Id.* at 11–12. The Court specifically addressed the counts remaining against Defendant and explained the dismissal of count two pursuant to the plea agreement. *Id.* at 7. The Court asked if Defendant understood the charges as contained in counts one and three, and Defendant affirmed that he understood. *Id.* at 8. Next, Defendant acknowledged the maximum punishment and stated that he had discussed the sentencing procedure with counsel. *Id.* at 8–9, 16. He affirmed that no one had threatened or forced him to plead guilty, and no one had promised him leniency. *Id.* at 17. Defendant also affirmed that the plea agreement was accurately described, the stipulation of facts was true and correct, and he had signed both documents. *Id.* at 15, 17–19. Specifically, Defendant affirmed he understood the terms of the plea agreement and that his counsel had read and gone over the plea agreement with him. *Id.* at 15. The Court accepted Defendant's guilty plea after being satisfied that he was competent to enter a plea, there was a factual basis for the plea, he understood the consequences of entering a plea, and he was voluntarily and knowingly pleading guilty. *Id.* at 22.

As set forth *supra*, Defendant testified that counsel had read and explained the plea agreement to him, *id.* at 12, that counsel had read and explained the stipulation of fact to him, *id.* at 17, that his counsel had explained the charges in the indictment to him, *id.* at 6, and that counsel had explained the sentencing guidelines to Defendant. *Id.* at 16. He also stated under oath that no one threatened or forced him to plead guilty. *Id.* at 17. Defendant's sworn statements in open court are entitled to a strong presumption of truthfulness. *See United States v. Lampaziane*, 251 F.3d

519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002). A signed, unambiguous plea agreement is also accorded great evidentiary weight when deciding if the plea is entered voluntarily. *See Bonvillan v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986).

Defendant's plea agreement and his sworn statements at rearraignment preclude the relief he seeks here. The evidence before the Court supports the finding that counsel was not ineffective and that Defendant's guilty plea was knowing and voluntary.

### 2. Failure to Advocate

Defendant contends Defendant's pretrial advocacy was inadequate. (D.E. 75, p. 6). Defendant urges that this limited his ability to negotiate a favorable plea or secure cooperation credit. *Id.*[2] As previously discussed, the Court finds Defendant's plea was knowing and voluntary. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991) (citation omitted). "This includes all [ineffective assistance of counsel] claims 'except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary.'" *United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019) (quoting *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000)).

The evidence before the Court shows that Defendant's guilty plea was knowing and

---

[2] At Defendant's sentencing, Defendant's counsel argued Defendant "has worked and participated with the Government," and "was truthful and he tried to help the Government as much as he could." (D.E. 64, p. 7). The Court ultimately varied downward for Defendant's sentence. *Id.* at 9.

voluntary. Therefore, he waived his claim regarding counsel's alleged failure to advocate prior to the plea agreement.

### 3. Failure to Object to Defendant's PSR

Third, Defendant contends his counsel failed to object to PSR enhancements. (D.E. 75, p. 5–6). Specifically, he argues the six-level enhancement for the 36 firearms, the four-level increase for trafficking, and the four-level enhancement for possession in connection with trafficking should have been objected to. *Id.* at 5. "Counsel could have argued for a lower firearm count (e.g., only those directly handled) or contested the trafficking enhancements' mens rea requirement. *Id.*

Counsel's failure to make frivolous objections does not cause Counsel's performance to fall below an objective level of reasonableness. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). A defendant is required to allege specific actions counsel should have taken and how those actions would have affected the proceeding's outcome. *Tamez v. United States*, No. 4:14cr28(21), 2021 WL 11505708, at *3 (E.D. Tex. Feb. 23, 2021) (Johnson, Mag. J.).

In this case, the Court accepted the PSR's representations, which was supported by information from Defendant's stipulation of fact, as agreed to by Defendant at his rearraignment. Defendant does not point out evidence that would have contradicted this factual basis. The Court does not see a basis for objecting to the enhancements applicable in this case. Accordingly, the Court does not find Defendant's Counsel was ineffective for failing to object.

### 4. Request for Hearing

Defendant has requested an evidentiary hearing on his motion. "Section 2255 requires a hearing unless the motion, files, and record of the case conclusively show that no relief is appropriate." *United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983) (citing Rules Governing Section 2255 Proceedings, Rule 4(b) (2019)). Because the record conclusively shows that

Defendant is not entitled to relief on any of the grounds he asserts, his request for a hearing is denied.

### 5. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Defendant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2255 Proceedings, Rule 11 (2019).

A certificate of appealability ("COA") "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a Section 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002). As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Defendant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## B. Amendment 821 Sentence Reduction

Defendant also seeks to reduce his sentence pursuant to Amendment 821. (D.E .50, p. 4; D.E. 75, p. 7). Defendant cites retroactive Part B of Amendment 821 to the United States Sentencing Guidelines, which created a new guideline that provides for a decrease of two offense levels for offenders with zero criminal history points whose offense did not involve specific aggravating factors. *See* U.S.S.G. § 4C1.1. A defendant is ineligible for a zero-point reduction if the defendant were "to possess, receive, purchase, transport, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another to do so) in connection with the offense." *See id.* at § 4C1.1(a)(7).

Defendant's criminal history score was zero; however, he fails to meet the criteria for an adjustment because he engaged on several occasions in the trafficking of firearms. (D.E. 28, p. 4–5). He therefore receives no benefit from Amendment 821. Accordingly, the Court **DENIES** Defendant's request to reduce his sentence, (D.E. 50).

## C. Compassionate Release

The First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), allows a prisoner to move for a sentence reduction under certain circumstances; at issue here is colloquially called "compassionate release." *See United States v. Shkambi*, 993 F.3d 388, 390–92 (5th Cir. 2021). A prisoner may move for compassionate release when "extraordinary and compelling reasons warrant such a reduction" and "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). "[T]his statutory phrase requires a

prisoner to show he 'faces some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner' that leads 'irresistibly' to the conclusion that this prisoner has a 'singular' and 'remarkable' need for early release." *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *1 (5th Cir. June 22, 2023) (quoting *United States v. Escajeda,* 58 F.4th 184, 186 (5th Cir. 2023)).

If the district court finds that extraordinary and compelling reasons warrant a sentence reduction, "then the court 'may' reduce the defendant's sentence 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Ward v. United States,* 11 F.4th 354, 359–60 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The applicable § 3553(a) factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the need to avoid unwarranted sentencing disparities among similarly-situated defendants; and the various kinds of sentences available. See 18 U.S.C. §§ 3553(a)(1)-(7). "The district court has discretion to deny compassionate release if the Section 3553(a) factors counsel against a reduction." *Ward,* 11 F.4th at 360.

### *1. Family Circumstances*

Under the Guidelines, a defendant's family circumstances may be extraordinary due to "[t]he death or incapacitation of the caregiver of the defendant's minor child." U.S.S.G. § 1B1.13(b)(3)(A). Defendant alleges his family circumstances are sufficient as his family is experiencing significant hardship due to his incarceration. (D.E. 50, p. 5). Defendant

acknowledges his spouse works to support the family and is not incapacitated. *Id.* Although the Court is sympathetic to Defendant's family circumstances, the Court finds Defendant has failed to demonstrate that his family circumstances warrant compassionate release.

### 2. *18 U.S.C. § 3553(a) Factors*

Defendant was indicted following an ATF investigation linking him to several purchases of firearms utilizing false identifying information and transferring those firearms to a co-conspirator who transported them to Mexico. (D.E. 28, p. 4). At sentencing, Defendant was held responsible for purchasing 36 items determined to be firearms using false information—six machine guns, seven silencers, and twenty-three firearm silencers. *Id.* at 7. On at least one occasion, Defendant transported the firearm himself to Mexico. *Id.*

The Court acknowledges Defendant has no prior criminal history, *id.* at 9, and that he has made efforts at rehabilitation while incarcerated. (D.E. 50, p. 5–6). Nevertheless, based on the nature and circumstances of the offense of conviction, and the danger to the community, the Court finds that releasing Defendant when he has served less than a quarter of his sentence would be inconsistent with the sentencing factors set forth in 18 U.S.C. § 3553(a) and would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense, nor would it deter criminal conduct or protect the public from his further crimes.

## IX. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's § 2255 motion, § 3582 motion, and motion for a sentence reduction under Amendment 821. (D.E. 50). The Court further **DENIES** Defendant's request for a hearing and **DENIES** a Certificate of Appealability.

SO ORDERED.

DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Signed: Corpus Christi, Texas
June 12, 2026

14 / 14